STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CHARLES BARBOSSA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 9, 1976—Decided December 14, 1976.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. Samuel R. DeLuca,* attorney for appellant.

*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney for respondent (*Mr. R. Benjamin Cohen,* Assistant Prosecutor, of counsel and on the brief).

PER CURIAM. Following defendant's conviction of embezzlement (*N. J. S. A.* 2A:102–5) by a jury, he filed

this appeal. He was convicted on an indictment charging him with embezzling $360.84 worth of auto parts belonging to his employer between October 22, 1971 and March 6, 1973.

Defendant raises two issues. The first is whether the trial judge abused her discretion in excluding evidence offered by defendant tending to show that defendant's employer at the time of trial possessed auto parts similar to or identical to the parts allegedly embezzled. We need not consider this issue. We have concluded that the conviction must be reversed because the State failed to prove beyond a reasonable doubt that defendant committed the crime. This point is raised by the second ground of appeal assigned by defendant — that the trial judge erred in failing to grant defendant's motion for judgment of acquittal. R. 3:18–1.

██ The test for determining whether to grant a motion for judgment of acquittal is:

> * * * whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. *State v. Fiorello*, 36 *N. J.* 80, *pp.* 90–91 (1961), *certiorari* denied, 368 *U. S.* 967, 82 *S. Ct.* 439, 7 *L. Ed.* 2d 396 (1962). [*State v. Reyes*, 50 *N. J.* 454, 459 (1967)]

Throughout the interval referred to in the indictment, from October 22, 1971 to March 6, 1973, defendant was employed by Northwest Airlines, Inc. The State established that during that period of time defendant, who was authorized to order parts on behalf of his employer, ordered and signed for automotive parts which could not be used by Northwest but could be used or adapted for use in two automobiles, Ramblers, that defendant ostensibly owned. The State presented no evidence as to what happened to the parts after delivery to the employer's premises.

The State and defendant stipulated that the initials "CB" on the relevant purchase orders and invoices were defend-

ant's, and that the writing on the purchase-order form was defendant's. Normally the purchase order was filled out before the goods were delivered, but sometimes would be prepared at the time of the delivery of the goods. In those instances where the purchase order was filled out at the time the goods were delivered and the invoice presented, the person filling out the purchase-order form would be the same person who initialed the invoice. Generally, though, the person who initialed the invoice was not necessarily the person who made up the purchase order. The employer sometimes paid for items not on an invoice, for reasons which are not apparent.

Defendant was an employee of Northwest for eight years, and from October 1971 to March 1973 was a mechanic for that company at the Newark Airport. There were six other mechanics also employed by Northwest at the airport. It was testified that at least three or four employees of Northwest owned Ramblers between 1971 and 1973.

The trial judge, in denying the respective motions for acquittal made at the close of the State's case and after the evidence of all parties had been closed, recognized that one of the elements necessary to be established beyond reasonable doubt was that defendant appropriated to his own use the property which he received. She held that there was sufficient testimony to establish that by the fact that the particular parts which defendant allegedly ordered were "generally used * * * for passenger car use," and that

* * * there were a few instances where upon cross-examination it has been brought out that some of these items can be utilized upon industrial equipment, but the totality of the evidence here clearly indicates that these items that are included and which the State alleges are embezzled by Mr. Barbossa * * * were private passenger car parts, whether they be for a Rambler or for any other kind of passenger car part. There is further testimony * * * that there were no private passenger cars at Northwest Airlines and none were authorized.

The judge concluded that on the basis of this circumstantial evidence the jury could find that defendant ap-

propriated the automobile parts to his own use. We cannot agree. In effect the trial judge found that the jury could infer that defendant appropriated the automobile parts to his own use merely from the evidence that he ordered them, that they were of the kind that could not be used on Northwest's equipment and that they could be used on the make of car or cars owned by defendant. Although defendant disputed the foregoing evidential facts, the trial judge properly could assume all facts favorable to the State's case to be true for the purposes of the motion. *State v. Reyes, supra.*

There was no direct proof that defendant actually converted the parts to his own use. Consequently, the issue is reduced to the question of whether said proofs were a sufficient basis upon which a reasonable inference of misappropriation of the auto parts by defendant could be drawn. As stated, we do not think so.

■ In order to establish that defendant committed the crime of embezzlement it was incumbent upon the State to prove beyond a reasonable doubt the following five elements:

1. an employee-employer relationship between defendant and his employer, Northwest Airlines, Inc.;
2. defendant had possession of the property and it was the property of the employer;
3. such possession existed by virtue of the employee-employer relationship;
4. defendant appropriated that property for his own use, and
5. such appropriation was done with intent to defraud.

*State v. Bobbins,* 35 *N. J. Super.* 494, 497 (App. Div. 1955), aff'd 21 *N. J.* 338 (1956), app. dism. 352 *U. S.* 920, 77 *S. Ct.* 220, 1 *L. Ed.* 2d 157 (1956); *State v. Thyfault,* 121 *N. J. Super.* 487, 497 (Cty. Ct. 1972), aff'd 126 *N. J. Super.* 459 (App. Div. 1974).

■ It will be observed that "possession" of the property is a separate element from "appropriation" of the property. Thus, appropriation must be something more than mere possession of the property. Legal possession of the

property is fundamental to the crime of embezzlement; but possession alone does not constitute the crime — appropriation for one's own use with the necessary criminal intent is the crime. *State v. Kennedy,* 61 *N. J.* 509, 512–513 (1972); *State v. Daly,* 38 *N. J.* 1 (1962); 2 *Wharton's Criminal Law and Procedure,* § 513 at 188 (1957). The mere transmittal of the parts to defendant does not in itself constitute criminal conversion. *Urciolo v. State,* 272 *Md.* 607, 325 *A.* 2d 878, 894 (Ct. of App. Md. 1974).

Likewise, the courts have distinguished the element of appropriation from the element of intent. The distinction would not have been made unless appropriation was something different than having the intent to defraud. "Appropriation to his own use" has sometimes been defined as defendant's depriving the owner of the benefit of the property legally entrusted to defendant. *State v. Bull,* 249 *A.* 2d 881, 885 (Me. Sup. Jud. Ct. 1969). Since no proof has been offered as to where the parts are, it cannot be concluded that defendant's employer has been deprived of the benefit of the parts.

If it could be inferred from the evidence (which only tended to establish that defendant had possession of the parts as part of his job and possibly that he intended to appropriate the parts for his own use) that defendant *did* appropriate the parts for his own use, then there would be no need for requiring the State to prove this element of the crime. Such a proof would be redundant. Obviously this is not the case. Case law in New Jersey bears out this conclusion. For example, in *Daly, supra,* defendant, being an agent, received $20,000 from his principal for a specified purpose. He had the $20,000 deposited in his own checking account and used it for his own purposes, foreign to those of his principal. This constituted the appropriation.

In *State v. Lamb,* 125 *N. J. Super.* 209 (App. Div. 1973), defendant, a clerk who had the duty of checking delivery slips against incoming items, with knowledge accepted deliveries of bread which contained shortages. The delivery man was a close friend of defendant. The stolen bread was

then sold elsewhere. The defendant claimed he had never received any money for his part in the scheme. Nonetheless, the court affirmed defendant's conviction for embezzlement. Actual possession was not necessary. Appropriation for the benefit of a third party not the employer is sufficient to establish the "appropriation" element. It remains that defendant aided in the enjoyment and use of the bread by someone other than his employer.

In *Thyfault, supra,* defendant was an authorized agent who was obligated to hold and remit money received by him to his principal. The court held that failure to timely return the money constituted embezzlement, 121 *N. J. Super.* at 498.

In *State v. Pearson,* 39 *N. J. Super.* 50 (App. Div. 1956), defendant, a construction company, contracted to build a house for the lot owners. A down-payment of $2,312.80 was received by defendant, but the house was never built. In reversing a conviction of misappropriation of funds, contrary to *N. J. S. A.* 2A:102–10, the court stated:

> Failure to erect a building after acceptance of money to do so does not establish the crime contemplated by the statute. The criminality arises only when the contractor or officers, or directors or agents thereof pay or consent to the payment or appropriation of the construction moneys for another purpose prior to the payment of all proper claims and charges thereon. *State v. Bleichner,* 11 *N. J. Super.* 542 (App. Div. 1951). [at 59]

The court clearly distinguished acceptance and possession of the money from use of the money by defendants for their own purposes.

Thus, "appropriation" is a separate element which must be proved. It is not suggested that appropriation of necessity be proved by direct evidence that defendant used the parts for his own benefit or otherwise deprived the owner of the benefit of these parts. Circumstantial evidence may be sufficient, but in the present case the State has offered no evidence, direct or circumstantial, that defendant actu-

ally appropriated the parts for his own use. If the State had offered any evidence that defendant had carried away the parts or altered the parts, then the conviction could be sustained. But, absent any evidence of what happened to the parts, it cannot be inferred that defendant embezzled the same.

While it may have been proved that through circumstantial evidence defendant was attempting to embezzle the parts, that is not the crime of which defendant was charged and convicted. The fact that defendant's employer may have had no use for these parts alone is insufficient.

For the foregoing reasons, the judgment of conviction is reversed.

SEIDMAN, J. A. D. (dissenting). I am constrained to disagree with the result reached by my colleagues. In my view, the judgment of conviction should be affirmed.

The rationale of the majority opinion may be summed up thus: There being no direct proof of defendants actually converting the auto parts to his own use, the issue was whether the proofs were sufficient for a reasonable inference of misappropriation of the parts. Possession of the items in question is separate from appropriation thereof; the crime is appropriation for one's use with the necessary criminal intent. Since no proof was offered as to where the parts were, one may not conclude that defendant's employer was deprived of the benefit of the parts. If one might infer that defendant did appropriate the parts for his own use, from evidence that he had possession of the parts and "possibly * * * intended to appropriate [them] to his own use," then there would be no need for requiring the State to prove this element of the offense: such proof would be redundant. Had the State offered any evidence that defendant had carried away the parts or altered them, the conviction could be sustained. Absent such evidence, one may not infer that defendant embezzled the same.

I have recited at some length the reasoning of the majority in order to demonstrate more readily its inherent fallacy. I am satisfied, on the facts here present, that, in order to withstand a motion for a judgment of acquittal, it was not incumbent on the State to offer direct proof, testimonial or otherwise, of what had happened to the auto parts, or that defendant had actually carried them away.

An inference of guilt may be based upon circumstantial evidence. *State v. Franklin,* 52 *N. J.* 386, 406 (1968). In weighing such evidence to determine if guilt exists, the proper test, as in the case of direct or testimonial evidence, is whether it is sufficient to generate a belief of guilt beyond a reasonable doubt. *State v. Mills,* 51 *N. J.* 277, 287 (1968), *cert.* den. 393 *U. S.* 832, 89 *S. Ct.* 105, 21 *L. Ed.* 2d 104 (1969); *State v. Dancyger,* 29 *N. J.* 76, 84 (1959). Our courts have abandoned the earlier concept, expressed in *State v. Donohue,* 2 *N. J.* 381, 390 (1949), that where the State's evidence is circumstantial, all of the circumstances not only must concur to indicate a defendant's guilt but they must also be inconsistent with any other rational conclusion, and they must exclude "every other hypothesis except that of guilt." See *State v. Fiorello,* 36 *N. J.* 80, 87–88 (1961).

The law is now settled, on a motion for a judgment of acquittal, that if, upon viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, it appears that a reasonable jury could find guilt of the charge beyond a reasonable doubt, the motion must be denied. *State v. Reyes,* 50 *N. J.* 454, 459 (1967).

As the majority correctly notes, the State was required to prove beyond a reasonable doubt in this case that (1) an employee-employer relationship existed between defendant and his employer, Northwest Airlines, Inc.; (2) defendant had possession of the property and it was the property of the employer; (3) such possession existed by virtue of the

employee-employer relationship; (4) defendant appropriated that property for his own use (or for the use of another); and (5) the appropriation was done with intent to defraud. *State v. Thyfault*, 121 *N. J. Super.* 487, 497 (Law Div. 1972), aff'd 126 *N. J. Super.* 459 (App. Div. 1974).

That an employee-employer relationship existed between defendant and Northwest Airlines is not in dispute. Additionally, it was stipulated below that the writing on the particular purchase orders involved was defendant's, and that his initials were on those forms and also on the corresponding invoices from the suppliers of the parts, evidencing their delivery and defendant's receipt of the items. Those facts would reasonably lead to the inference that defendant took possession of the goods, and that he did so on behalf of his employer. *Cf. State v. Lamb*, 125 *N. J. Super.* 209, 216 (App. Div. 1973). As a matter of fact, defendant concedes in his brief that the State proved beyond a reasonable doubt the first three elements of the offense, as set forth above.

That which remains is, thus, the issue of fraudulent appropriation. At this juncture, I part company with my colleagues. They acknowledge that the State established that defendant ordered and signed for items which could not be used by Northwest on its equipment but could be used or adapted for use on Rambler automobiles owned by him. They maintain, however, that this is insufficient for an inference of fraudulent appropriation. I submit that they are mistaken in this respect.

As indicated earlier, any offense or element of an offense may be established by circumstantial evidence. 1 *Wharton, Criminal Evidence* (13th Ed.) § 6 at 4–5. The prosecution is entitled to the benefit of all legitimate inferences reflected by such evidence. Moreover, each fact is not to be isolated from the other circumstances proved, but is to be weighed as it is associated with or relates to the other relevant proof proffered by the State. *State v. Cerce*, 22 *N. J.* 236, 246 (1956). The process of all evidence is, after all, an infer-

ence of one fact from the existence of another; or, to put it another way, all evidence must involve an inference from some fact to the proposition to be proved. *State v. Mucci,* 25 *N. J.* 423, 431 (1957). The drawing of an inference is proper "when, in the experience of mankind, the existence of the one fact ordinarily and logically follows from the existence of the other." *Wharton, supra,* § 90 at 143. Furthermore, an inference upon an inference is permissible, *i. e.,* a fact desired to be used circumstantially need not itself be established by testimonial evidence. 1 *Wigmore, Evidence* (Third Ed.), § 41 at 435. See *Jackson v. D. L. & W. R. R. Co.,* 111 *N. J. L.* 487, 492 (E. & A. 1933); *State v. Fiore,* 85 *N. J. L.* 311, 320 (E. & A. 1913); *cf. Dierkes v. Hauxhurst Land Co.,* 80 *N. J. L.* 369, 377 (E. & A. 1910).

To require the State in this case to go beyond the proofs submitted and show that defendant actually made off with the parts would be completely unrealistic, and would effectively bar the State from establishing that an embezzlement had in fact been committed. One cannot ignore the proofs favorable to the State which, if believed by a jury, would tend to establish that defendant, in the course of his employment, ordered and came into possession of auto parts which could not be used on his employer's equipment but which could be used on his own automobiles. It seems to me, as a matter of common sense, that a reasonable inference could properly be drawn from those facts that defendant purposefully ordered auto parts for his own use and thus fraudulently appropriated them, leading to a finding of guilt beyond a reasonable doubt.