## Alexandria

JUAN DAMIAN DELGADO

v.

COMMONWEALTH OF VIRGINIA

No. 1063-91-4

Decided March 9, 1993

COUNSEL

Thomas J. Kelley, Jr., for appellant.

Katherine B. Toone, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Juan Damian Delgado (appellant) appeals from a judgment of the Circuit Court of Arlington County (trial court) which approved a jury verdict convicting him for possession of cocaine with the intent to distribute. The sole issue presented by this appeal is

whether the trial court erred in denying appellant's pretrial motion to dismiss the indictment for violation of the Interstate Agreement on Detainers (IAD), Code § 53.1-210 to 53.1-215. Specifically, appellant alleges that he was not tried within the time constraints of those Code provisions and, therefore, Article IV (e) of the IAD requires that the indictment against him be dismissed with prejudice.

Appellant's conviction on March 27, 1991 emanated from an Arlington County indictment returned on December 17, 1990, that charged that on December 21, 1988, appellant possessed cocaine with the intent to distribute in violation of Code § 18.2-248(A). He was arrested on December 21, 1988, and on the following day released on a $5,000 bond pursuant to his promise to appear and answer the charge whenever it was scheduled to be heard. He further agreed that he would not leave the Commonwealth without permission of the court. Appellant failed to appear at a October 19, 1989 scheduled preliminary hearing in an Arlington County General District Court. On October 2, 1989, appellant was sentenced by a Maryland court to serve thirty months in a Maryland prison for unlawfully selling drugs in that state and was incarcerated therein when he was scheduled to appear in the Arlington County General District Court.

On May 27, 1990, the prosecuting attorney for Arlington County, by letter, advised the warden of the Maryland prison in which appellant was incarcerated that appellant had failed to appear in the Arlington District Court on a felony warrant for cocaine distribution and requested temporary custody of appellant pursuant to Article IV (a) of the IAD. By letter dated June 15, 1990, addressed to the Maryland warden and styled, "Request for disposition of untried charges," appellant requested that "this matter be taken care of as soon as possible." On June 22, 1990, by certified mail, appellant forwarded to the Arlington County District Court a "Motion For Speedy Trial Pursuant To Maryland Rule 4-271." The record does not inform us of the requirements of that rule.

A copy of the Commonwealth's formal detainer was acknowledged "received" by appellant from the Maryland warden on September 10, 1990. The detainer instructed appellant of the steps he was required to take if he sought early disposition of the charges for which the detainer had been lodged. In relevant part, the detainer notice advised appellant as follows:

You shall be brought to trial within 180 days, unless extended pursuant to provisions of the Agreement (IAD), *after you have* caused to be delivered to said prosecuting officer (of the demanding state) and said court (in which the charge is pending) written notice of the place of your imprisonment and your request, *together* with a certificate of the custodial authority as more fully set forth in the Agreement. However, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

In a letter dated September 6, 1990, the Maryland warden, pursuant to Article IV of the IAD, offered to deliver temporary custody of appellant to the Virginia authorities. On October 14, 1990, appellant was transported to Arlington. On December 17, 1990, an Arlington County grand jury indicted appellant for possession of cocaine with the intent to distribute.

On January 24, 1991, appellant moved to dismiss the indictment with prejudice, asserting that he was not tried within the number of days required by Code § 53.1-210 for the offense for which the detainer had been lodged. The motion was denied by the trial court and on February 5, 1991, appellant's trial on the indictment commenced. On February 6, 1991, the jury hearing the matter advised the trial court that it could not agree on a verdict and a mistrial was declared.

By agreement of counsel, approved in an order, the matter was again scheduled for trial on March 27, 1991. On that date, appellant again moved that the indictment be dismissed with prejudice for failure of the Commonwealth to prosecute as required by Code § 53.1-210. Appellant also argued that good cause had not been determined or shown for continuing the case from February 6, 1991 to March 27, 1991. The trial court held that when the parties agreed to the continuance order, good cause was implicit in the agreement and order.

■ Code §§ 53.1-210 to 53.1-215 constitute an agreement between the Commonwealth of Virginia and other states, territories and the United States, who join in a compact by enacting substantially the same provisions contained in those Code sections. The Code provisions are known as the Interstate Agreement on Detainers. Its purpose is to encourage the orderly and expeditious disposition of detainers based on untried indictments, informations or complaints. *See* Code § 53.1-210, Art. I.

■ The IAD contains two time limitations in which a prisoner in the state in which he is incarcerated (sending state) must be tried by the state that lodges the detainer (receiving state). If the receiving state requests the prisoner's presence, the IAD requires that prosecution must begin within 120 days from the day the prisoner arrives in the receiving state. If the prisoner requests early prosecution and agrees to and complies with the provisions of the IAD, the limitation for prosecution is 180 days. The issue here is whether the 120-day or 180-day limitation applies and how the time limitations are determined.

If the 180-day time limitation is calculated from June 15, 1990 or June 22, 1990, days on which appellant's requests for disposition were made, the February 5, 1991 trial date was beyond the date the IAD required that appellant's trial begin. On the other hand, if the 180-day limitation is calculated from September 12, 1990, the day on which the Maryland warden's letter, certificate and accompanying documents were received by the Arlington County Court and prosecutor, the February 5, 1991 trial date was timely. In addition, if the time limitation is calculated based on the Commonwealth's request that appellant be returned to Virginia for prosecution, October 14, 1990, the day appellant arrived in this state, is the day on which the 120-day period commenced, and the February 5, 1991 trial date was timely.

The Commonwealth argues that the 120-day period applies to this case because it requested appellant's return before appellant made his original request. We need not decide in this case which party filed the original request because we find that under either the 180-day or 120-day limitation, the trials began within the times prescribed by the IAD.

(3) Article III (a), contained in Code § 53.1-210, requires that when there is an untried indictment, information or complaint that is the basis for a detainer lodged by a receiving state, the prisoner must be tried within 180 days after the prisoner has caused to be delivered to the prosecuting officer and the appropriate court of the receiving state, written notice of the place of the prisoner's imprisonment and the prisoner's request for final disposition of the indictment, information or complaint. However, that Code provision also requires that the "request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

Appellant argues that when he notified the Maryland warden of his request for disposition of the charges referred to in the detainer lodged by the Commonwealth, the 180-day provision was triggered, requiring that he be transported to Virginia and tried within 180 days from June 15, 1990. In addition, he argues that when he mailed the motion to the Arlington County District Court and prosecutor on June 22, 1990, that was received on June 27, 1990, that motion also triggered the 180-day limitation. Therefore, he contends, February 5, 1991, his initial trial date, was beyond the 180-day limitation and that the indictment should have been dismissed with prejudice.

The Commonwealth responded, and the trial court agreed, that the 180-day period did not start until all the provisions of Code § 53.1-210 had been complied with, and that compliance did not occur until September 12, 1990, when the Commonwealth received the warden's certificate, including the documents the Code declares *must* accompany the request for disposition. We must decide whether notice to the warden and the prosecutor in June started the 180-day limitation or whether it started on September 12, 1990 when the Commonwealth received the documents that Code § 53.1-210 declares ''shall'' accompany the request.

A brief review of the significant dates contained in the record discloses that on May 27, 1990, the Commonwealth requested temporary custody of appellant for the reason set forth in its detainer request. On June 15, 1990, appellant addressed a letter to the Maryland warden requesting disposition of the charge contained in the detainer. No other document was filed with the warden at that time. On June 22, 1990, appellant mailed to the Arlington County District Court and prosecutor a motion for speedy trial according to Maryland law. The motion was received on June 27, 1990. Appellant's forwarding letter contained only the motion. By letter dated September 6, 1990, the warden forwarded appellant's request and the warden's certificate, accompanied by the information required by Code § 53.1-210. Those documents were received by the Commonwealth on September 12, 1990. On October 14, 1990, appellant was transported to Virginia.[1] Prosecution began in the trial court on February 5, 1991. On February 6, 1991, a mistrial was declared because the jurors could not reach an unanimous agreement. The trial court approved the parties' agreement that

---

[1] The prosecution clearly was conducted within the 120-day period required if the prosecution's request takes precedence over appellant's subsequent request.

the matter would be continued to March 27, 1991, on which date appellant was tried and convicted.

The issue before us has not previously been considered by a Virginia appellate court. Our examination of authorities from other states indicates a split of authority. For example, in *State v. Ternaku*, 156 N.J. Super. 30, 383 A.2d 437 (1978), the New Jersey Court held that the 180-day period did not begin "upon mere execution and delivery of the notice and request to the warden . . . or other official having custody of the defendant." *Id.* at 34, 383 A.2d at 439. That Court concluded that if "the [l]egislature intended the 180-day period to begin from the time a defendant delivers the notice and request to the warden . . . it could have so signified [that intent] by appropriate language."[2] *Id.* We agree with that conclusion. *See also Michigan v. Fex*, 439 Mich. 117, 479 N.W.2d 625, *cert. denied*, 112 S. Ct. 1935 (1992) (notice to the warden does not trigger the 180-day period).

In *Carchman v. Nash*, 473 U.S. 716 (1985), in a matter involving the IAD, the United States Supreme Court said:

> Specifically, Art. III requires the warden to inform the prisoner that a detainer has been lodged against him and that he may request final disposition of the indictment, information, or complaint upon which the detainer is based. If the prisoner makes such a request, the warden must forward it, *together with a certificate providing certain information* about the prisoner's terms of confinement, to the appropriate prosecuting official and court of the receiving State. *The authorities in the receiving State then must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect.*

*Id.* at 721 (emphasis added).

A similar view is found in the report that the United States Senate Judiciary Committee presented when it recommended passage of the IAD:

> Under the agreement, prison authorities are required to inform prisoners of all indictments, informations, or complaints on the basis of which detainers have been lodged against them by other

---

[2] Clear intent of the beginning date for 120-day period is contained in the IAD.

jurisdictions. Prisoners may then request trial on such pending charges. *Any request is transmitted through the warden to the proper official in the other jurisdiction who then has 180 days to bring the prisoner to trial.*

S. Rep. No. 91-1356, 91st Cong., 2d Sess. 2 (1970) *reprinted in* 1970 U.S.C.C.A.N. 4864, 4865 (emphasis added).

A thorough discussion of the varying views relating to the 180-day period is contained in *State v. Moore*, 774 S.W.2d 590 (Tenn. 1989), where the Tennessee Supreme Court stated:

> *In our opinion the receiving state cannot be charged with attempting to try the prisoner within 180 days until the receiving state has been given notice, by the prisoner or by officials of the sending state, of a request to proceed* under Article III. Once that burden has been satisfied by the prisoner, the receiving state must, of course, comply with the terms of the Compact. There is a division of authority on this point. *A few states have calculated the time from the date of the signing of the request for disposition, Form II, regardless of whether the receiving state receives the request or not. See, e.g., McCallum v. State*, 407 So. 2d 865 (Ala. Crim. App. 1981); *People v. Daily*, 46 Ill. App. 3d 195, 4 Ill. Dec. 756, 360 N.E.2d 1131 (1977); *Commonwealth v. Martens*, 398 Mass. 674, 500 N.E.2d 282 (1986), *cert. denied*, 481 U.S. 1041 (1987); *State v. Wells*, 186 N.J. Super. 497, 453 A.2d 236 (1982); and *People v. Pellegrino*, 131 Misc. 2d 118, 499 N.Y.S.2d 841 (Sup. Ct. 1986).
>
> *By far a greater number of cases, however, have reached the opposite conclusion, holding that the prosecutor or court in the receiving state cannot reasonably be expected to proceed until receipt of notice of the prisoner's request. See, e.g., Young v. Mabry*, 471 F. Supp. 553 (E.D. Ark. 1978), *aff'd*, 596 F.2d 339 (8th Cir.), *cert. denied*, 444 U.S. 853 (1979); *Beebe v. Vaughn*, 430 F. Supp. 1220 (D. Del. 1977); *Spears v. State*, 280 Ark. 577, 660 S.W.2d 913 (1983); *People v. Bielecki*, 41 Colo. App. 256, 588 P.2d 377 (1978); *State v. Braswell*, 194 Conn. 297, 481 A.2d 413 (1984), *cert. denied sub. nom. Braswell v. Connecticut*, 469 U.S. 1112 (1985); *State v. Minnick*, 413 So. 2d 168 (Fla. Dist. Ct. App. 1982); *Pinnock v. State*, 384 So. 2d 738 (Fla. Dist. Ct. App. 1980); *Thompson v. State*, 186 Ga. App. 379, 367 S.E.2d 247 (1988); *Scrivener v. State*, 441 N.E.2d 954 (Ind. 1982); *Holland*

*v. State*, 265 Ind. 216, 352 N.E.2d 752 (1976); *Sweat v. Darr*, 235 Kan. 570, 684 P.2d 347 (1984); *State v. White*, 234 Kan. 340, 673 P.2d 1106 (1983); *Hines v. State*, 58 Md. App. 637, 473 A.2d 1335 (1984); *State v. Walton*, 734 S.W.2d 502 (Mo. *en banc* 1987); *State v. McGann*, 126 N.H. 316, 493 A.2d 452 (1985); *State v. Ternaku*, 157 N.J. Super. 30, 383 A.2d 437 (1978); *State v. Reitz*, 26 Ohio App. 3d 1, 498 N.E.2d 163 (1984); *Commonwealth v. Fisher*, 451 Pa. 102, 301 A.2d 605 (1973); *State v. Moosey*, 504 A.2d 1001 (R.I. 1986). *See generally* Annot., 98 A.L.R.2d 160 § 15[a] (1980).

*Id.* at 595 (emphasis added).

■■■ "An obvious purpose of an interstate agreement is to achieve a uniform body of law in the jurisdictions that have enacted the agreement. Absent sound reasons to the contrary, it is therefore sensible to interpret such an agreement in the same manner as a majority of other jurisdictions." *Michigan v. Fex*, 439 Mich. at 121 n.5, 479 N.W.2d at 627 n.5. In relevant part, Code § 53.1-210 provides:

> The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

We hold that for the prisoner to be entitled to a dismissal with prejudice of an indictment pending in the receiving state, he or she must prove not only that notice of the request for disposition has been received but also that the request was "accompanied by a certificate of the appropriate official having custody," together with the information required by the above quoted portion of Code § 53.1-210. Upon receipt of those documents by the court and prosecutor in the receiving state, the 180-day limitation begins to run. We believe that if the General Assembly of Virginia intended that notice, standing alone, to the sending state's warden of the prisoner's request starts the 180-day period, it would have said so. It did not. We do not believe that the legislature intended to make a sister state or territory warden, over

which Virginia authorities have no control, its agent for the purpose of receiving notices and documents required by the IAD.[3]

Appellant further argues that because no affirmative finding of "good cause shown" was made by the trial court at the time the mistrial was declared, the time limits provided by the IAD were not tolled and, therefore, that the trial from which this appeal emanates held on March 27, 1991 was beyond the limitations provisions of the IAD whether the June 15 or October 14 date is used. Article III (a) of Code § 53.1-210 specifically provides that "for good cause shown in open court" the court may grant any necessary or reasonable continuance. Upon a showing that a mistrial was declared because the jurors could not reach a unanimous agreement, and the parties in open court agreed to continue the matter to March 27, 1991, all disclosed by an order approving the agreement, we find that the "good cause shown" requirement of that Code section was met and the trial was held within the limitation provisions of the IAD.

Accordingly, the judgment of the trial court denying the motions to dismiss and approval of the jury verdict is affirmed.

*Affirmed.*

Coleman, J., and Fitzpatrick, J., concurred.

---

[3] Although appellant argues that he was powerless to force the warden to act, he did not assert that the Maryland warden was guilty of misfeasance or malfeasance in his delay in forwarding the documents to the Arlington County Court and prosecutor; thus we do not consider the effect, if any, that delay may have had on rights granted to the prisoner by the IAD. Moreover, we have examined the record in this case and find no evidence of prejudice to appellant's defense which resulted from the warden's delay.