COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Annunziata and
          Senior Judge Hodges
Argued at Richmond, Virginia


MARK PHILLIP ECKARD

v.   Record No. 1694-94-2                    OPINION BY
                                    CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA                 AUGUST 15, 1995


          FROM THE CIRCUIT COURT OF HENRICO COUNTY
                 Lee A. Harris, Jr., Judge

          Craig S. Cooley for appellant.

          Eugene Murphy, Assistant Attorney General
          (James S. Gilmore, III, Attorney General,
          on brief), for appellee.


     Mark Phillip Eckard was convicted on his conditional plea of

guilty of conspiracy to distribute more than five pounds of

marijuana and possession of more than five pounds of marijuana

with the intent to distribute.  On appeal, Eckard contends that

his motion to dismiss the indictments on those crimes should have

been granted because of the Commonwealth's failure to prosecute

him within the time limits mandated by the Interstate Agreement

on Detainers (IAD).  Code § 53.1-210, et seq.  We hold that

because Eckard failed to conform to required procedures under

Article III of the IAD, he did not trigger the prescribed time

period in which the Commonwealth had to prosecute him, and,

therefore, the trial court properly denied his motion.

Accordingly, we affirm his convictions.

     In March 1991, Eckard was arrested while in possession of

thirty pounds of marijuana.  Eckard was indicted for possession

of and intent to distribute more than five pounds of marijuana and for conspiracy to distribute more than five pounds of marijuana. On December 4, 1991, Eckard, who was free on bond, failed to appear in court to answer the charges alleged in the indictments. A capias was issued for Eckard's arrest.

Eckard was arrested on unrelated charges in Tennessee on November 22, 1992. On December 1, 1992, Henrico County authorities requested that a detainer be placed against Eckard in Tennessee and that Tennessee authorities notify them as soon as their jurisdiction had disposed of its local charges against Eckard so that extradition procedures could begin. On September 6, 1993, while in the Shelby County Jail in Tennessee waiting transfer to the Tennessee Department of Corrections, Eckard sent a communication purporting to be under the IAD requesting that the detainer against him be disposed of within 180 days. The communication was not accompanied by a certificate of Eckard's prison status by the appropriate prison official, and it is disputed whether Eckard contacted Tennessee authorities to send that certificate. That the Tennessee authorities never sent a certification of Eckard's prison status to Virginia as required by the IAD is not disputed.

On September 17, 1993, the Shelby County Sheriff's Department informed Henrico County authorities that Eckard was being transferred to the Tennessee Department of Corrections and that Virginia would have to lodge its detainer directly with the Department of Corrections in Tennessee. The lodging of the

Virginia detainer by Henrico County authorities with the Department of Corrections became effective October 13, 1993. Eckard received formal notice of the lodging of the detainer with Tennessee on October 20, 1993, via a standard form which Eckard declined to sign. Eckard also refused to sign two other forms, one a waiver of extradition, the other a consent to temporary transfer of custody, thereby preventing Henrico County authorities from transferring him to Virginia for trial.

On January 19, 1994, Eckard waived extradition and the Commonwealth's IAD Article IV request for temporary custody of Eckard to be tried in Virginia was formally acknowledged. Eckard was transferred to Henrico County on or about February 20, 1994, and tried on June 23, 1994.

The IAD is codified in Code §§ 53.1-210 through 53.1-215. It provides a method of transferring a prisoner from one jurisdiction to another for disposition of pending charges. Under the IAD, once a state has lodged a detainer based on an untried indictment, information, or complaint against a prisoner in another jurisdiction, the authorities must notify the prisoner of the detainer and give the prisoner an opportunity to request final disposition of the pending charges. Code § 53.1-210, Article III (c).

Article III (a) of the IAD requires that when a receiving state (Virginia) lodges a detainer in the sending state (Tennessee), the prisoner must be tried within 180 days after the prisoner "has caused to be delivered to the prosecuting officer

and the appropriate court of the receiving state, written notice of the place of the prisoner's imprisonment and the prisoner's request for final disposition of the indictment, information or complaint." Delgado v. Commonwealth, 16 Va. App. 50, 54, 428 S.E.2d 27, 29 (1993).

> "Specifically, Art. III requires the warden to inform the prisoner that a detainer has been lodged against him and that he may request final disposition of the indictment, information, or complaint upon which the detainer is based. If the prisoner makes such a request, <u>the warden must forward it, together with a certificate providing certain information about the prisoner's terms of confinement, to the appropriate prosecuting official and court of the receiving State</u>. The authorities in the receiving State then must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect."

Id. at 56, 428 S.E.2d at 30 (quoting Carchman v. Nash, 473 U.S. 716, 721 (1985)) (emphasis added, in part).

Article V (c) of the IAD provides the statutory remedy in the event that Article III (a) is violated:

> [i]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

In Delgado, we held that the 180-day limitation begins to run only upon receipt by the receiving state of the Article III request documents "accompanied by a certificate of the appropriate official having custody," together with the

information required by Code § 53.1-210, Article III (a). 16 Va. App. at 58, 428 S.E.2d at 32. Without proof that those documents were received from the warden along with the warden's certification of the information required by Article III (a), a prisoner is not entitled to a dismissal with prejudice of an indictment pending in the receiving state. Id.

In this case, Eckard's communication of his request for final disposition of the pending charges was not accompanied by the appropriate certificate from the Tennessee authorities. The record also indicates that Eckard's request to Virginia came directly from Eckard by certified mail, rather than from the Tennessee authorities, and does not show that he contacted the Tennessee authorities to send the certificate.

Despite our holding in Delgado, Eckard urges us to now adopt another position. Eckard argues that a request under Article III is not invalid merely because the warden/jailer fails to prepare/attach and forward the certificate of the prisoner's status. Eckard contends, therefore, that he triggered the 180-day period on or about September 17, 1993 when he gave notice by certified mail to the Clerk of the Henrico Circuit Court and a representative of the Henrico Commonwealth's Attorney's Office. Eckard maintains this position despite the absence of the certification required by Article III (a). In support of his argument, Eckard cites Fex v. Michigan, 113 S. Ct. 1085, 1091 (1993), which held that the 180-day time period of the IAD does not commence "until the prisoner's request for final disposition

of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."

Assuming but not deciding that Eckard contacted the Tennessee prison authorities to send the certificate, we reaffirm our holding in Delgado that without the warden's certificate, the 180-day period under Article III (a) does not commence.[1]  In doing so, we hold further that the prisoner's request must be sent to the receiving state's authorities by the warden, or other appropriate prison officials, in the sending state to whom the prisoner has first communicated his request.  Thus, because Eckard's request was both unaccompanied by the warden's certificate and was sent to the Henrico Circuit Court Clerk and Commonwealth's Attorney directly from Eckard instead of the warden, Eckard's motion to dismiss the indictments against him with prejudice was properly denied.

The language of Article III (b) expressly states that the prisoner's request "shall be given or sent by the prisoner to the warden."  In Delgado, we explained the importance of the requirement that a prisoner's request must be first given to the warden when we said that the General Assembly did not intend that "notice, standing alone, to the sending state's warden of a prisoner's request" would start the 180-day period.  16 Va. App

---

[1] Because we reaffirm our holding in Delgado, reference should be made to that case in which we cited extensive case law in support of our holding.

at 58, 428 S.E.2d at 32.  We also note that <u>Fex</u> bolsters our holding in <u>Delgado</u> and is of no support in Eckard's case because it dealt with a prisoner who gave his Article III request to the warden who in turn forwarded the request to the officials in the jurisdiction from which the detainers were lodged.  113 S. Ct. at 1088.

The language in <u>Fex</u> intimates an understanding by the Supreme Court that a prisoner's Article III request must come through the prison authorities in the sending state and must be accompanied by the warden's certificate.  In discussing its holding that the 180-day period commences on the date the Article III request is delivered to the court and prosecuting officer in the receiving state, the court noted the insignificance of the date upon which notice is given to the warden and by inference, therefore, confirmed the requirement that the delivery be made through the warden with the warden's certification or the required information concerning the prisoner's status.

> Indications in the text of Article III confirm, in our view, that the receiving State's receipt of the request starts the clock.  The most significant is the provision of Article III (b) requiring the warden to forward the prisoner's request and accompanying documents "by registered or certified mail, return receipt requested."  The IAD thus provides for documentary evidence of the date on which the request is delivered to the officials of the receiving state, <u>but requires no record of the date on which it is transmitted to the warden</u>.

<u>Id.</u> at 1090 (emphasis added).

"`[C]ourt's have generally required that prisoners must strictly comply with IAD procedures before they will dismiss

charges on the basis of a violation of [the 180-day provision of] Article III.'"  Casper v. Ryan, 822 F.2d 1283, 1292 (3d Cir. 1987), cert. denied, 484 U.S. 1012 (1988) (quoting Nash v. Jeffes, 739 F.2d 878, 884 (3d Cir. 1984)); see also Johnson v. Stagner, 781 F.2d 758, 761 (9th Cir. 1986) ("`formal requirements must be met before the timely trial provisions of IAD come into play'") (quoting Tinghitella v. California, 718 F.2d 308, 312 (9th Cir. 1983)).  In People v. Merryfield, 83 Ill. App. 3d 1017, 1021, 404 N.E.2d 907, 910 (1980), the Court held that a prisoner failed to comply with the statutory provisions of the IAD because he filed his request directly with the trial court and prosecuting attorney rather than the warden having custody of him.

> By not sending a written notice and request for final disposition to his warden, the defendant failed to initiate the procedure under Article III (b) which would have caused the certificate, as well as the notice and request for final disposition, to be mailed by the warden to the State's Attorney and the court.

Id.

Similarly, in Ellis v. Commonwealth, 828 S.W.2d 360 (Ky. 1992), the Court rejected a claim under the IAD because the defendant chose to communicate directly with the receiving state rather than sending his request to officials in the sending state.  828 S.W.2d at 361; also see People v. Garner, 224 Cal. App. 3d 1363, 274 Cal. Rptr. 298 (1990) (defendant's speedy trial claim rejected when defendant failed under the IAD to present his request for disposition of detainers to the warden, and request

lacked warden's stamp and was not contained in defendant's central prison file in sending state).

> Requiring prisoners to strictly comply with the provisions of the IAD produces substantial benefits. First, if a prisoner uses standard IAD form 2, and includes the certificate required by Article III (a), then the prosecuting authority will be notified that the IAD has been invoked and will be better able to avoid this severe sanction of dismissal mandated by Article V (c). Second, because prosecutors are not currently compelled to sort through every prisoner's correspondence and pleadings to find IAD references, the IAD remains an effective system to rapidly adjudicate the claims of prisoners challenging extradition. Third, requiring strict compliance with the IAD provides the prosecutor with information and the ability to decide whether or not to prosecute in the [receiving] state. If the prisoner is currently serving a lengthy sentence on a serious charge, then the [receiving] state might opt not to spend limited resources on a second trial unlikely to produce additional benefits.

Norton v. Parke, 892 F.2d 476, 480-81 (6th Cir. 1989), cert. denied, 494 U.S. 1060 (1990) (citations omitted).

We find the rationale of Norton and the other cases cited above compelling. The Henrico Commonwealth's Attorney was under no duty to act upon Eckard's letter of request for disposition of the detainers without receipt of Eckard's notice and request from the Tennessee prison authorities accompanied by their certification of the required information in Article III (a). Compliance with the procedural requirements is the only way the Commonwealth can be placed on notice that they must bring the prisoner to trial within 180 days. As in other jurisdictions, we are aware that Article IX states that the IAD "shall be liberally construed so as to effectuate its purposes." However, allowing

substantial circumvention of IAD procedures does not serve the IAD's purposes, which we view as "the orderly and expeditious disposition of charges pending in foreign jurisdictions and the establishment of cooperative procedures to facilitate such disposition."  See Garner, 224 Cal. App. 3d at 1370, 274 Cal. Rptr. at 302 (citation omitted).[2]

Accordingly, we affirm Eckard's convictions.[3]

Affirmed.

---

[2]  While Eckard maintains that he should not be punished for the prison official's dereliction of duty, nothing in the record supports his contention that he sent his notice of request for final disposition to the prison official.  Without evidence that he did so, we cannot presume that Eckard did in fact request the certificate from the warden.  "When alleging a violation of the IAD, the prisoner bears the burden of establishing its required notice was given."  United State v. Espinoza, 866 F.2d 1067, 1070 (9th Cir. 1988)

[3]  The Commonwealth also argues that Eckard's convictions should be affirmed because the IAD is not applicable to detainees held in local jails and because Eckard refused to waive extradition when the Commonwealth took steps under Article IV to return Eckard to Virginia to face prosecution.  We note that Eckard's failure to waive extradition demonstrates the disingenuous nature of his appeal.  However, we need not address either of these issues because of Eckard's failure to follow the procedure prescribed by the IAD.