COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Senior Judge Overton
Argued at Norfolk, Virginia


KATRINA ANNE MILLER, A/K/A
 KATRINA ANNE McDANIEL
                                          OPINION BY
v.    Record No. 1004-98-1        JUDGE RICHARD S. BRAY
                                        APRIL 27, 1999
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                   Alan E. Rosenblatt, Judge

            Ben Pavek, Assistant Public Defender, for
            appellant.

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Katrina Anne Miller (defendant) was convicted in a bench

trial on one count each of forgery and uttering, violations of

Code § 18.2-172.  Defendant complains on appeal that the trial

court erroneously denied her motion to dismiss the indictments

because the Commonwealth failed to commence trial within the

time prescribed by the Interstate Agreement on Detainers (IAD),

Code § 53.1-210, et seq., and, additionally, violated her

constitutional right of speedy trial.  Finding no error, we

affirm the convictions.

     Under familiar principles of appellate review, we examine

"the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom."  <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The instant offenses were committed during early August, 1995, in the City of Virginia Beach, and warrants of arrest charging defendant were issued on October 3, 1995.  On November 16, 1995, Virginia Beach police faxed copies of the warrants to "Chief Wagner[,] South Haven [Michigan] Police Department," together with a note that simply referenced, "authorized extradition of [defendant]."[1]  Copies of the warrants were subsequently delivered to defendant "in November 1995" by an officer of the "Van Buren County [Michigan] Sheriff's Department."

Defendant testified that she "was told that [she] could not seek resolution of the warrants until . . . incarcerated in [a] state facility," which occurred upon her transfer to the Scott Correctional Facility (Scott), Plymouth, Michigan, on May 7, 1996.  Immediately thereafter, defendant directed correspondence, dated May 9, 1996, to the Virginia Beach Commonwealth Attorney's Office (Commonwealth), advising of her incarceration at Scott and "pending release dates" and requesting "final disposition and/or resolution" of the local charges "pursuant to the Interstate Compact Agreement."

---

[1] Defendant testified that she was "last . . . in Virginia" October 3, 1995, and the record does not specify her location in Michigan on November 16, 1995.

Also on May 9, 1996, defendant wrote Diana I. Schmid, Records Office Supervisor at Scott, asking only that Schmid verify to the Commonwealth that defendant was then incarcerated at the facility. By letter of September 16, 1996 to the Commonwealth, Schmid complied and, in addition, advised of the time served and remaining on defendant's sentence and the date of her parole eligibility. Ms. Schmid concluded her correspondence by recommending that the Commonwealth "file your detainer by forwarding to [her] attention a certified warrant should you wish to pursue this matter."

On January 3, 1997, the Commonwealth addressed certified copies of the warrants to the "Records Office," Florence Crane Women's Facility (Crane), the institution then detaining defendant, accompanied by a request to "[p]lease lodge this information as a detainer" and "inform [defendant] of her rights" to seek "final disposition" under the IAD, using "appropriate forms." In response, the Michigan Department of Corrections, on January 15, 1997, provided defendant IAD Form I, "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," which fully advised defendant of the detainer and her rights and responsibilities pursuant to the IAD.[2]

---

[2] IAD Forms I, II, III, and IV are standardized documents, prepared in accordance with the IAD, which apprise a prisoner of a pending detainer and the relevant provisions of the IAD and facilitate a claim for relief under the Act. See Eckard v.

-

Initially, defendant refused even to acknowledge receipt of the document. Instead, she notified the Commonwealth, by letter dated January 15, 1997, of her "intention to file for dismissal of all charges" because "the required time factors have not been met . . . per IAD regulations." However, on October 13, 1997, defendant requested relief pursuant to the Act, using the IAD forms previously made available to her, and both Michigan and the Commonwealth immediately proceeded to comply. Defendant was returned to Virginia Beach on November 12, 1997, indicted on February 2, 1998, and brought to trial on February 17, 1998.

In support of a pretrial motion to dismiss the subject indictments, defendant contended that the IAD required the Commonwealth to bring her to trial within 180 days following her May 9, 1996 request for final disposition, which relied upon the Commonwealth's earlier fax to Michigan police. She further complained that the delay violated her Sixth Amendment right to a speedy trial. The court denied defendant's motion, and she was convicted of the instant offenses at trial, resulting in this appeal.

THE INTERSTATE AGREEMENT ON DETAINERS

The IAD, codified at Code §§ 53.1-210 through 53.1-215, provides "cooperative procedures" "to encourage the expeditious

_Commonwealth_, 20 Va. App. 619, 623-24, 460 S.E.2d 242, 244 (1995).

-

and orderly disposition of . . . charges" pending in one jurisdiction against a prisoner held by another jurisdiction. Code § 53.1-210, Art. I; see Delgado v. Commonwealth, 16 Va. App. 50, 53-54, 428 S.E.2d 27, 29 (1993).  The Act directs that

> [t]he warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

Code § 53.1-210, Art. III(c).

A request for final disposition "shall be given or sent by the prisoner to [such] . . . official having custody of him, who shall promptly forward it . . . to the appropriate prosecuting official and court," Code § 53.1-210, Art. III(b), "accompanied by a certificate of the . . . official . . ., stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility . . . and any decisions of the state parole agency relating to the prisoner."  Id. at (a).  Thus, a "prisoner's . . . request must come through the prison authorities in the sending state." Eckard v. Commonwealth, 20 Va. App. 619, 627, 460 S.E.2d 242, 246 (1995).

Once "a detainer has been lodged against [such] prisoner [by the receiving state,] he shall be brought to trial within

-

180 days after he shall have caused to be delivered [by the sending state] to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction . . . his request for a final disposition . . ." of the pending charges, together with the requisite supporting documentation from the sending state. Code § 53.1-210, Art. III(a) and (b). The 180-day limitation commences "upon receipt by the receiving state of the Article III request documents" from the sending state, complete under the Act. Eckard, 20 Va. App. at 625, 460 S.E.2d at 245 (citation omitted); see Code § 53.1-210, Art. III(a). Failure by the receiving state to proceed timely requires dismissal, with prejudice, of the charges which gave rise to the detainer. Code § 53.1-210, Art. V(c). Conversely, to enjoy the benefits of the Act, a prisoner must likewise strictly comply with its provisions. See Eckard, 20 Va. App. at 627-29, 460 S.E.2d at 246-47.

A "detainer" contemplated by the IAD is "'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" Carchman v. Nash, 473 U.S. 716, 729 (1985) (citations omitted) (emphasis added). This construction of the IAD is consistent with those provisions of the Act which impose certain responsibilities upon the "warden, commissioner of corrections or other official having custody of the prisoner." Code § 53.1-210, Art. III(c); see Eckard, 20 Va.

-

App. at 624-25, 460 S.E.2d at 245 (citing Delgado, 16 Va. App. at 56, 428 S.E.2d at 30).

Here, the record discloses that a copy of the arrest warrant was first faxed to the Chief of the South Haven (Michigan) Police Department on November 16, 1995, and, thereafter, delivered to defendant, presumably then incarcerated somewhere in Michigan.  Clearly, the Commonwealth's communication to the police chief was not lodged with the institutional authority designated by the IAD and, therefore, did not constitute a detainer under the Act, a circumstance which explains Schmid's recommendation in her letter of September 16, 1996, that the Commonwealth "file a detainer . . . should you wish to pursue the matter."  Thus, neither defendant's related communication of May 9, 1995 to the Commonwealth, requesting final disposition pursuant to the IAD, nor Schmid's separate correspondence months later implicated the Act.

Assuming that the Commonwealth subsequently lodged a proper detainer on January 3, 1997, defendant then declined to invoke her rights under the Act until October 13, 1997.  Thereafter, both Michigan and the Commonwealth fully complied with IAD mandates, and the 180-day limitation period commenced upon receipt of the requisite documents by the Commonwealth.  Thus, defendant's trial on February 17, 1998 was well within the time constraints of the IAD.  See Code § 53.1-210, Art. III(a).

-

CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

In assessing the merits of defendant's constitutional speedy trial claim, we must consider the following factors: "(1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant." Beachem v. Commonwealth, 10 Va. App. 124, 131, 390 S.E.2d 517, 520 (1990) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). "None of these four factors are regarded as 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial[,]' but, rather, 'are related factors and must be considered together with such other circumstances as may be relevant.'" Holliday v. Commonwealth, 3 Va. App. 612, 616, 352 S.E.2d 362, 364 (1987) (citation omitted).

Defendant asserts on brief that her "right to a speedy trial . . . were [sic] triggered . . . when the detainer was lodged against her." Accordingly, we begin our analysis with the proper filing of the subject detainer by the Commonwealth on January 3, 1997. If the ensuing "delay . . . [was] 'so protracted as to be presumptively prejudicial,' the first factor becomes a triggering mechanism which necessitates inquiry in the other factors that go into the balance." Beachem, 10 Va. App. at 131, 390 S.E.2d at 520 (citation omitted). The instant delay, from detainer to trial, spanned approximately thirteen months, a period we deem sufficient to merit further review.

-

"[W]hen a defendant challenges the delay as unreasonable, the burden devolves upon the Commonwealth to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth and, second, what part of any delay attributable to the prosecution was justifiable." Fowlkes v. Commonwealth, 218 Va. 763, 767, 240 S.E.2d 662, 664 (1978). Here, once the detainer was properly lodged with the Michigan authorities in early January 1997, defendant refused to exercise her IAD right to final disposition of the charges until October 13, 1997, a period of nine months. When she then decided to seek relief under the Act, the Commonwealth promptly assumed defendant's custody and brought her to trial timely. Hence, the delay from the filing of the detainer to defendant's IAD request for final disposition does not weigh against the Commonwealth. See Williamson v. Commonwealth, 13 Va. App. 655, 660, 414 S.E.2d 609, 612 (1992); Beachem, 10 Va. App. at 132, 390 S.E.2d at 520. The remaining four months, from the date of defendant's request for a final disposition of charges to trial, present no speedy trial concerns under the prevailing circumstances.

"The third prong of the Barker standard requires consideration of the presence or absence of the accused's assertion of the right to a speedy trial." Beachem, 10 Va. App. at 132, 390 S.E.2d at 521. Focusing, again, on the date the detainer was lodged by the Commonwealth in Michigan, defendant chose to forego for nine months the readily available right to

-

demand trial under the IAD.  Her post-detainer letter of January 15, 1997  did not request disposition but, rather, declared an intention "to file for dismissal of all charges."  Once defendant properly asserted her rights under the IAD, trial commenced within the time mandated by the Act.

Lastly, "[i]n considering prejudice to the defendant, the Barker court identified three types of interests safeguarded by the sixth amendment right to speedy trial:  (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."  Beachem, 10 Va. App. at 133, 390 S.E.2d at 521 (citing Barker, 407 U.S. at 532).  We address these concerns in order.

Manifestly, an accused, already imprisoned, may suffer oppressive pretrial incarceration because "'the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened by the pendency of another criminal charge outstanding against him.'" Holliday, 3 Va. App. at 620, 352 S.E.2d at 366-67 (quoting Smith v. Hooey, 393 U.S. 374, 378 (1969)); see Beachem, 10 Va. App at 133, 390 S.E.2d at 521.  Here, defendant alleges that the pendency of the detainer prevented her "from obtaining a lower security status, employment, and earning restitution."  However, defendant's claims are vague and generalized, abandoning to

-

conjecture any proper consideration of alleged oppression and prejudice.

Similarly, it is likely that a pending criminal prosecution would visit a measure of apprehension and concern upon any rational person. See Beachem, 10 Va. App. at 133-34, 390 S.E.2d at 521. However, defendant's conduct belies any claim that she experienced cognizable anxiety awaiting disposition of the Commonwealth's detainer. When notified of her rights pursuant to the IAD and provided the documentation necessary to trigger the benefits of the Act, defendant did nothing to comply for nine months, an unlikely reaction from one troubled by the prospect of unresolved offenses.

Finally, we consider any impairment to the defense. Although defendant alleges that she did not "know where any of [her] witnesses [were] that . . . might . . . help in [her] defense," the record is silent relative to the identity, last whereabouts or expected testimony of any defense witness. Again, defendant invites this Court to speculate, presupposing the existence, availability, and materiality of phantom witnesses.

Thus, applying the balancing test established in Barker to the instant record, we find no violation of defendant's constitutional right to speedy trial.

-

Accordingly, the trial court properly denied defendant's motion to dismiss the subject indictments, and we affirm the convictions.

<u>Affirmed.</u>