UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Ortiz and Chaney
Argued at Fairfax, Virginia


DESHAWN JERMEL MARTIN

MEMORANDUM OPINION* BY
v.        Record No. 0375-24-4                    CHIEF JUDGE MARLA GRAFF DECKER
OCTOBER 7, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
James E. Plowman, Judge[1]

Anna Cox, Senior Trial Attorney (Office of the Public Defender, on
briefs), for appellant.

Israel-David J.J. Healy, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Consistent with a plea agreement, Deshawn Jermel Martin entered a conditional guilty plea

to felony eluding under Code § 46.2-817(B).  The agreement preserved Martin's right to appeal the

trial court's denial of his pretrial motion to dismiss the charge under statutory and constitutional

speedy trial grounds and the Interstate Agreement on Detainers (IAD).  Martin also contends the

court erred in overruling his evidentiary objections to two supporting exhibits submitted in the

Commonwealth's response to the motion to dismiss.  Finding no error, the Court affirms the

conviction.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Plowman presided at the guilty plea and sentencing hearing.  Judge Douglas L.
Fleming, Jr., presided at the pretrial hearing on the motion to dismiss, and Judge James P. Fisher
entered the agreed-to amended sentencing order.

BACKGROUND[2]

This case involves a request by Martin to be returned to Virginia for disposition of his charge for felony eluding. In 2016, he was indicted by the grand jury for felony eluding. During the pendency of his trial on that charge, Martin was serving a sentence in Maryland for attempted first-degree murder. He did not return to Virginia until 2023. The key date for purposes of this appeal occurred in September 2023 when Martin filed his second request for disposition under the IAD. With this backdrop in mind, we relay the relevant facts in chronological order.

On July 14, 2016, the Maryland Capitol Park Police notified the Fauquier County Sheriff's Office that they were investigating Martin, who was believed to be involved in a shooting in Maryland and was en route to a cemetery in the county. Fauquier County deputies saw Martin's car near the cemetery and attempted to stop him. Martin fled from the scene. His car struck a mailbox before he finally pulled into a convenience store where he was arrested for felony eluding.

At a preliminary hearing on August 10, 2016, the eluding charge was certified to the grand jury. Martin was given a $3,000 unsecured bond but was held without bail "on another charge." On September 16, 2016, Martin informed the Fauquier County Circuit Court that he had been extradited to Maryland on August 24, 2016. Martin represented that he had a hearing set for September 26, 2016, on the eluding charge and wanted to appear in the Virginia court so he would not be charged with failure to appear. Martin attached an "inmate request form" dated September 8, 2016, which showed that the Maryland correctional center where he was being held had informed him that he could "contact" the Virginia court "so that they [could] make arrangements." The

_____

[2] The facts are recited "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so "requires [the appellate court] to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

Fauquier County Circuit Court Clerk wrote Martin on September 30, 2016, advising him that the court could not consider his ex parte communication and would forward it to counsel of record.

On September 26, 2016, the grand jury returned an indictment on the eluding charge. At a hearing held on the same date in the Fauquier County Circuit Court, defense counsel told the court that Martin had been extradited and was being held in custody in Maryland. Accordingly, the court directed that a capias be issued to "act as a hold on Mr. Martin over in Prince George's County, Maryland." The capias was issued on September 28, 2016, for failure to appear "according to the conditions of the recognizance" for the felony eluding charge.

Martin wrote the circuit court on March 17, 2023, asking for information to "close out" his case in Virginia. The clerk's office filed the letter, but the Commonwealth's Attorney never received a copy of it. Two months later, on May 17, 2023, Martin sent documents to the Fauquier County General District Court requesting final disposition of his case pursuant to Article III of the IAD. That court forwarded the documents to the circuit court, which sent them to the Fauquier County Commonwealth's Attorney. The Commonwealth's Attorney wrote Martin on August 7, 2023, informing him that his office received the IAD documents on July 17, 2023. In the letter, the prosecutor said that the Commonwealth could not act on his request because the submitted documents did not comply with the requirements of Article III. The letter advised Martin that his request must be sent by registered or certified mail to the appropriate prosecutor and court (i.e., the Fauquier County Commonwealth's Attorney and Circuit Court). Martin was told in the letter to include the correct case number for the crime of felony eluding (CR-16-457).[3]

On September 6, 2023, Martin submitted a second request for disposition under the IAD. Even though the submission was still deficient because it was not received by registered or certified mail, the prosecutor accepted it and proceeded under the IAD to have Martin brought to Virginia.

_____

[3] Martin had identified his case as failure to appear (CR-16-457C).

Martin was returned on November 6, 2023, and served with the felony eluding indictment.[4] The prosecutor told the court that the case had to be tried within the 180-day limit established under the IAD. The circuit court appointed counsel for Martin and ordered him to be held without bond pending a status hearing on November 27, 2023.

At the status hearing, the case was set for trial on January 30, 2024. On December 15, 2023, Martin moved to dismiss the eluding charge, contending the delay in trying him violated both his statutory and constitutional right to a speedy trial and also exceeded the time limits for trial under the IAD.

A hearing on the motion was held on January 3, 2024. Martin challenged Exhibits A and D, which the Commonwealth included in its response to the motion to dismiss. Exhibit A was Martin's 2016 commitment order from the general district court. The order granted Martin a $3,000 unsecured bond for the eluding charge but noted he was being held without bond on the Maryland charges. Exhibit D was a copy of the capias for failure to appear dated September 28, 2016, received by the Maryland facility where Martin was confined. Martin argued the documents lacked an adequate foundation. The trial court overruled the objection and admitted the exhibits.

Regarding his speedy trial claims, Martin attributed the seven-year delay in prosecuting his case to the Commonwealth. He contended that he was prejudiced by the delay because he could have been moved from a maximum-security prison to a medium-security facility except for the detainer lodged by the Commonwealth in 2017. Martin acknowledged, however, that he learned of his eligibility to be moved to a less secure facility in 2021 but had not written the Virginia circuit court until March 2023 because he "was handling other court cases" he had in Maryland. In his

---

[4] It is not entirely clear from the record when Martin was served with the indictment. The Commonwealth's response to the motion to dismiss recited that Martin was served with the indictment on November 8, 2023. The stamp on the indictment, however, stated that "the return of service on the indictment" was on November 9, 2023. Any ambiguity in the record on this point does not affect the holding in this case.

- 4 -

March 17, 2023 letter to the Virginia court, Martin said that he needed to dispose of his detainer because he was "currently starting the process of applying for programs in the State of Maryland."

After argument by counsel, the circuit court denied Martin's motion to dismiss the indictment. The court held that the Commonwealth had complied with the time limit established in the IAD. It concluded that Martin's statutory right to a speedy trial was not violated because his incarceration in a Maryland facility between 2016 and his extradition to Virginia in 2023 tolled the statute. Finally, the court ruled that Martin's constitutional speedy trial claim failed under the four-part test enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972).

On February 1, 2024, Martin entered a conditional guilty plea to felony eluding, preserving his right to appeal the denial of his motion to dismiss. The Commonwealth agreed to dismiss the capias on the failure to appear charge and to recommend a sentence at the low end of the sentencing guidelines. The court imposed an eight-month sentence.

ANALYSIS

Martin argues the trial court erred in admitting Exhibits A and D into evidence and in denying his motion to dismiss the charge for alleged violations of his statutory and constitutional rights to a speedy trial and the IAD.

I. The trial court did not abuse its discretion in admitting Exhibits A and D.

"A trial court must find any facts on which the admissibility of evidence depends by a preponderance of the evidence." *Davis v. Commonwealth*, 79 Va. App. 123, 142 (2023). "In a non-constitutional context [the appellate court] review[s] a trial court's decision on whether to admit or exclude evidence under an abuse of discretion standard." *Commonwealth v. Swann*, 290 Va. 194, 197 (2015). Unless the court's factual findings "'underlying the admissibility'" decisions are "'plainly wrong'" or lack supporting evidence, they are "binding on appeal." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (first quoting *Bloom v. Commonwealth*, 262 Va. 814,

- 5 -

821 (2001); and then quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). And "[a] reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022).

Martin argues that the Commonwealth did not establish a foundation for admission as evidence when offering Exhibits A (2016 commitment order) and D (copy of capias). He is correct that a writing generally must be authenticated before it may be admitted into evidence.[5] *Snowden v. Commonwealth*, 62 Va. App. 482, 485 (2013). However, "[a]uthentication is merely the process of showing that a document is genuine and that it is what its proponent claims it to be." *Id.* (quoting *Owens v. Commonwealth*, 10 Va. App. 309, 311 (1990), *overruled in part by Waller v. Commonwealth*, 278 Va. 731, 736 (2009)). "The amount of evidence sufficient to establish authenticity will vary according to the type of writing, and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is genuine will suffice." *Williams v. Commonwealth*, 35 Va. App. 545, 556-57 (2001) (quoting *Walters v. Littleton*, 223 Va. 446, 451 (1982)).

Exhibit A was Martin's 2016 commitment order from the general district court. In arguing for its admissibility, the prosecutor stated that the order "was in the Commonwealth's file that we had from general district court and obviously became a circuit court file and we just had it in our file." The circuit court clerk informed the court that "the bond was scanned in the court file and is currently in the paper file." Citing Virginia Rule of Evidence 2:201, the trial court determined that it could take judicial notice of the document because it was part of the court's own record.

---

[5] We recognize that in the context of a criminal pretrial hearing "adherence to the [r]ules of [e]vidence . . . is permissive, not mandatory." Va. R. Evid. 2:1101(c.). Nevertheless, we address this issue under the legal framework provided by the rules of evidence, as did the trial court. *See generally McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018).

Exhibit D was a copy of the capias for failure to appear that was received by the Maryland facility where Martin was confined. The document reflected that a circuit court clerk issued the capias on September 28, 2016, and the Fauquier Sheriff's Department "received" it the next day. The document was also date-stamped October 5, 2017, when it was faxed from the Sheriff's Office's Communications fax machine. The prosecutor stated that her office had "reached out to Maryland to get a copy of the detainer that was in [Martin's] file."[6] Based on that conversation, the Commonwealth's attorney proffered that their copy "mirrors directly the copy of the capias that was issued by [the Fauquier County Circuit Court] in 2016." Martin argued that the document did not show when the Maryland prison authorities received the capias or if they in fact had received it at all. He contended that testimony from a Maryland Department of Corrections official was necessary. Noting that the Virginia trial date was approaching and the motion to dismiss had been filed recently, the prosecutor said that issuing a subpoena to a Maryland official would have taken "a long period of time." The court admitted Exhibit D based on the Commonwealth's representation, finding that the documents came "from sources [i.e., officers of the court] whose accuracy could not reasonably be questioned."

For these reasons, we hold that the trial court did not abuse its discretion in finding by a preponderance of the evidence that Exhibits A and D were properly authenticated and admitting them into evidence.

---

[6] The prosecutor said in closing argument that when her office obtained the capias from Maryland officials, "the individual that we spoke with . . . indicated that upon receipt of a capias or a detainer, the defendant is notified within one week." Martin objected to this representation on the grounds that "evidence is closed and also on the basis of lack of foundation since there's no one here to testify." The court did not expressly rule on this objection. Martin has not assigned as error the trial court's failure to sustain his objection or its reliance on this additional representation by the Commonwealth. Rather, he argues in his reply brief only that the proffer failed to prove he received any notice of the detainer.

II.  Martin's statutory speedy trial right was not violated.

A statutory speedy trial claim "presents a mixed question of law and fact."  *Ali v. Commonwealth*, 75 Va. App. 16, 29 (2022) (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)).  "The appellate court gives deference to the trial court's factual findings but reviews legal issues *de novo*, including questions regarding the proper construction of [the] statute."  *Id.*

"Code § 19.2-243 provides specific time limits 'within which an accused must be tried, absent tolling or other statutory exceptions.'"  *Osman v. Commonwealth*, 76 Va. App. 613, 657 (2023) (quoting *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022)).  If the defendant is held in continuous custody after the general district court has found probable cause, his trial must be held within five months.  *See* Code § 19.2-243.  In contrast, if he "is not held in custody but has been recognized for his appearance in the circuit court," his trial must be held within nine months.  *Id.* Significantly, the statutory speedy trial period is subject to tolling.  Code § 19.2-243(1)-(7) lists circumstances that toll the running of the statute, but the enumerated provisions are not exclusive. *See Jiron-Garcia v. Commonwealth*, 48 Va. App. 638, 650 (2006) (holding that Code § 19.2-243 was "implicitly" tolled while the incarcerated defendant was unavailable for trial in state court due to being in federal custody).  The Commonwealth must prove a delay was based on a tolling "or on [the accused's] waiver, actual or implied, of his right to be tried within the designated period." *Wallace v. Commonwealth*, 65 Va. App. 80, 89 (2015) (alteration in original) (quoting *Powell v. Commonwealth*, 29 Va. App. 745, 748 (1999)), *aff'd*, 292 Va. 1 (2016).

The record shows that Martin was arrested for felony eluding on July 14, 2016, and on the same date was served with a fugitive warrant for attempted first-degree murder in Maryland.  The general district court held a preliminary hearing on August 10, 2016, and found probable cause to certify the eluding charge to the grand jury.  As a result, the statutory speedy trial clock began to run on August 11, 2016.  *See Robinson v. Commonwealth*, 28 Va. App. 148, 152 (1998).  Martin was

granted an unsecured bond on the eluding charge and then was extradited to Maryland on August 24, 2016. Because Martin was not in continuous custody under § 19.2-243, the nine-month time limit applies here. *See Ford v. Commonwealth*, 33 Va. App. 682, 694 (2000) (holding that where the defendant was confined in the federal system on federal charges, his continuous custody under § 19.2-243 began only when he was delivered to Virginia authorities). Under the nine-month limit, the Commonwealth had "at least 273 days" to try Martin, subject to any tolling periods. *McCray v. Commonwealth*, 44 Va. App. 334, 342 (2004).

Thirteen days passed from August 11, 2016, to Martin's extradition to Maryland on August 24, 2016. He then was convicted in Maryland of attempted first-degree murder and sentenced to fifty-five years in prison. He did not initiate procedures under the IAD to "close out" his Virginia case until 2023 and was not available for trial in Virginia until his return on November 6, 2023. *See Ford*, 33 Va. App. at 694. Martin's trial occurred eighty-seven days later on February 1, 2024, well within the nine-month limit of 273 days. Therefore, Martin's statutory right to a speedy trial was not violated.

### III. Martin's constitutional speedy trial right was not violated.

The standard of review governing a Sixth Amendment speedy trial claim, like a statutory one, presents a mixed question of law and fact. *Osman*, 76 Va. App. at 657. We give deference to the trial court's factual findings but review legal issues de novo. *Id.*

Constitutional speedy trial challenges are assessed under the Supreme Court's test enunciated in *Barker v. Wingo*. The Court articulated a "balancing test [that] necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." 407 U.S. at 530. The Court identified four factors that reviewing courts must weigh: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*

The length of the delay is a "triggering mechanism." *Id.* Whether a delay qualifies as presumptively prejudicial "necessarily depend[s] upon the peculiar circumstances of the case." *Id.* at 530-31. A delay of one year or more is deemed "presumptively prejudicial" and warrants consideration of the remaining three *Barker* factors. *Osman*, 76 Va. App. at 660; *see Reedy v. Commonwealth*, 77 Va. App. 81, 94-95 (2023). Accordingly, the more than seven years between Martin's arrest on July 14, 2016, and subsequent trial on February 1, 2024, warrants review under the additional *Barker* factors.

The second factor we must examine is the reason for the delay. "Although any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes, 'different weights should be assigned to different reasons' for delay." *Reedy*, 77 Va. App. at 96 (quoting *Ali*, 75 Va. App. at 42). Delay attributable to the Commonwealth may be "deliberately improper, merely negligent, [or] valid and unavoidable." *Id.* (quoting *Ali*, 75 Va. App. at 42). In *Doggett v. United States*, 505 U.S. 647, 656 (1992), the Supreme Court held that "official bad faith in causing delay will be weighed heavily against the government." At the other end of the spectrum is "diligent prosecution," which nevertheless may entail "pretrial delay [that] is often both inevitable and fully justifiable," such as when the government may need time to obtain custody of the defendant. *Id.* The middle ground, "official negligence," is "obviously to be weighed more lightly than a deliberate intent to harm the accused's defense." *Id.* at 656-57. Yet "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Id.* at 657; *Reedy*, 77 Va. App. at 96 (noting that negligent delay weighs against the Commonwealth because "the ultimate responsibility for such circumstances must rest with the government" (quoting *Ali*, 75 Va. App. at 42)). An appellate court "review[s] determinations of negligence with considerable deference." *Doggett*, 505 U.S. at 652.

Here, the record makes clear that almost immediately after Martin was charged with felony eluding in 2016, he was extradited to Maryland on a very serious charge, convicted of attempted first-degree murder, and sentenced to fifty-five years in prison. Martin testified at the hearing on the motion to dismiss that he concentrated on his Maryland cases until 2023. His attorney acknowledged that the Commonwealth was not obligated under Article IV of the IAD to request Martin's transfer to Virginia.[7]

Despite this concession in the trial court, Martin now argues that the Commonwealth should be charged with the delay in his case because it could have sought his return to Virginia under Article IV of the IAD and did not do so. But nothing in the IAD required the Commonwealth to act or penalized it for choosing not to act. Given the serious criminal charge in Maryland and the heavy sentence he ultimately received, the Commonwealth certainly did not abuse its discretion in not seeking temporary custody of Martin to try him on the felony eluding charge. Further, the Commonwealth had "no right to . . . custody" of Martin, who was a Maryland prisoner. *See Williamson v. Commonwealth*, 13 Va. App. 655, 660 (1992) (holding Virginia had no right to custody of a prisoner who was awaiting trial in North Carolina); *see also Gaskins v. Clarke*, 303 Va. 280, 284 (2024) (per curiam) (holding that Maryland officials were free to reject a Virginia court's request to detain Gaskins because the request fell outside the bounds of the IAD and was "a matter of comity" between the two states).

Martin contributed to the delay by not seeking transfer to Virginia under the IAD until May 2023. His initial request did not comply with the required IAD procedure. *See Yiaadey v.*

---

[7] Under Article IV of the IAD, "the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom a detainer [has been lodged] and who is serving a term of imprisonment in any party state made available . . . upon presentation of a written request for temporary custody." Code § 53.1-210, Art. IV(a). In response to the request, the "sending state shall offer to deliver temporary custody of such prisoner . . . in order that speedy and efficient prosecution may be had." Code § 53.1-210, Art. V(a).

*Commonwealth*, 29 Va. App. 534, 544 (1999) (holding that a prisoner must strictly comply with IAD procedure). The Commonwealth showed its good faith by notifying him of the procedural deficiencies in his request. The Commonwealth received Martin's corrected request on September 25, 2023. That request was still deficient because it was not sent by certified or registered mail, but the prosecutor nevertheless proceeded to obtain temporary custody of Martin on November 6, 2023. He was tried approximately three months later on February 1, 2024.

In sum, under the second factor, the reasons for the delay do not weigh heavily against the Commonwealth. *See Williamson*, 13 Va. App. at 660 (holding that seven-month delay in lodging detainer against defendant after trial proceedings concluded in North Carolina at most "resulted from dereliction [and was a] circumstance which does not weigh heavily against the Commonwealth").

*Barker*'s third factor of the test examines the defendant's assertion of his speedy trial right. A defendant does not automatically waive his constitutional right by failing to demand a speedy trial. *See Barker*, 407 U.S. at 528. Rather, "the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* Martin's ex parte letter of September 16, 2016, did not assert his right to a speedy trial. Instead, it merely requested assistance so that he could attend a pretrial hearing and avoid a failure to appear charge.[8] Martin did nothing more concerning the eluding charge until 2023. He specifically explained to the trial court that he focused on addressing his Maryland proceedings until that time. He did not file an acceptable request under the IAD until September 2023, and he waited until

_____

[8] In his motion to dismiss, Martin did not claim that this letter triggered the provisions of the IAD. He contended that his request on March 17, 2023, established the operative date. But that letter merely requested information to "close out" his Virginia case. It did not expressly assert a speedy trial right. *See Young*, 297 Va. at 453 (holding that where "defense counsel never used the word 'object' during the discussion regarding the continuance of trial," his statement that "he could not be ready for trial" was "not the same as affirmatively objecting to a continuance").

- 12 -

December 15, 2023, to seek dismissal of the indictment. Consequently, this factor is weighed against Martin.

Finally, the fourth *Barker* factor requires the Court to consider prejudice to the defendant. As to prejudice, *Barker* identified three interests that the speedy trial guarantee protects: (1) "prevent[ing] oppressive pretrial incarceration"; (2) "minimiz[ing] anxiety and concern of the accused"; and (3) "limit[ing] the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The third interest is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

The record demonstrates that Martin was not prejudiced under *Barker*. First, to establish "oppressive pretrial incarceration," Martin made a proffer in the trial court regarding the nature of his confinement in a maximum-security facility in Maryland and the benefits he would have derived from reclassification to a medium-security institution. The Commonwealth did not contest the proffer generally but did not concede that the Virginia detainer accounted for Martin's continued confinement at a maximum-security facility. The court gave short shrift to Martin's proffer. It noted that "it's probably more likely the gravity of his [Maryland] convictions" accounted for his classification but concluded that, in any case, Martin had presented no "evidence that this detainer is the result, the proximate cause, of his being held at that level of security."

Second, Martin's testimony at the hearing belies any claim that the pending eluding charge "caused him stress and anxiety because it meant he did not know when he would be released, and that he was not able to tell his children when he would be released." The eluding charge was significantly less concerning than the attempted first-degree murder charge in Maryland and accompanying fifty-five-year sentence.[9] Martin testified that, after his conviction became final in

---

[9] Martin acknowledged in his plea agreement that a conviction for eluding under Code § 46.2-817 authorized a maximum punishment of five years or, in the trier of fact's discretion, only a fine not exceeding $2,500.

- 13 -

Maryland in 2018, he "focused on" post-conviction matters in Maryland. He admitted it was only in 2023 that his attention turned to the Virginia charge, even though he knew in 2021 that he could have been eligible for transfer to a medium-security facility in Maryland but for the detainer. Even when he did turn to his Virginia charge, it was in order to address matters involving his Maryland incarceration. Martin's March 17, 2023 letter to the Fauquier County Circuit Court stated that he wanted information on how to "close out" the Virginia charge because he was "starting the process of applying for programs in the State of Maryland."

Finally, Martin has not shown "'in what specific manner' factors such as missing witnesses, missing evidence, or improved access to counsel 'would have [impaired or] aided the defense.'" *Ali*, 75 Va. App. at 49 (alteration in original) (quoting *United States v. Medina*, 918 F.3d 774, 781-82 (10th Cir. 2019)). Martin's assertion that the passage of seven years "will necessarily affect the precision of eyewitness memories" counts for little. The Commonwealth told the court that "the offense was recorded on dashcam video which has been made available to the defendant and the officers involved are still present." Martin has not identified any witnesses who were lost because of the delay. *See Beachem v. Commonwealth*, 10 Va. App. 124, 134 (1990) (holding that where the defendant provided no details to support his allegations of prejudice, to conclude that his defense was impaired "would require nothing short of sheer speculation"). Generalized assertions do not establish prejudice to support a speedy trial claim. *See Osman*, 76 Va. App. at 670-71; *Ali*, 75 Va. App. at 50. In any event, delay can be "a two-edged sword." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *see also Kelley v. Commonwealth*, 17 Va. App. 540, 547 (1994) (if a "prosecution witness loses his memory, the state may be prejudiced").

Viewing this record, any claimed "oppressive pretrial incarceration" and "anxiety and concern" were chargeable to Martin, not the Commonwealth. *Barker*, 407 U.S. at 532. And he has

failed to establish that his defense was impaired. *See Osman*, 76 Va. App. at 670-71. Accordingly, the prejudice factor is weighed against Martin.

In sum, we hold that Martin was not denied his constitutional right to a speedy trial. His own conduct resulted in his incarceration in Maryland between 2016 and 2023. He did not properly seek transfer to Virginia under the IAD until 2023. The Commonwealth accepted the documents he submitted in September 2023 and tried him within five months. Martin did not assert a speedy trial violation until December 2023. And he has not demonstrated that he was prejudiced under *Barker*.

## IV. The time limits set by the IAD were not violated.

Martin argues that he was not tried within 180 days after the Commonwealth received his IAD request on July 17, 2023. His argument fails because it relies on an incorrect date.

Like statutory and constitutional speedy trial claims, issues under the IAD involve mixed questions of law and fact. We review legal issues de novo but give deference to factual findings. *See Young*, 297 Va. at 450.

The IAD, which is codified in Code §§ 53.1-210 through 53.1-215, "provides 'cooperative procedures' to encourage the expeditious and orderly disposition of . . . charges' pending in one jurisdiction against a prisoner held by another jurisdiction." *Miller v. Commonwealth*, 29 Va. App. 625, 630 (1999) (alteration in original) (quoting Code § 53.1-210, Art. I); *see Dorr v. Clarke*, 284 Va. 514, 521 (2012). Under the IAD, the state that lodges the detainer is the receiving state (in this case, Virginia), and the state where the prisoner is incarcerated is the sending state (in this case, Maryland). Code § 53.1-210, Art. II. Once a state has lodged a detainer against a prisoner in another jurisdiction, the authorities in the state having custody of the prisoner must notify him of the detainer and also inform him of his right to request final disposition of the pending charges on which the detainer is based. *Miller*, 29 Va. App. at 630 (citing Code § 53.1-210, Art. III(c)).

When the prisoner requests a transfer from the sending state to the receiving state, as occurred in this case, he must be tried within 180 days from the date the receiving state receives the requisite documents. *See* Code § 53.1-210, Art. III(a); *Miller*, 29 Va. App. at 631. The charge is dismissed with prejudice if the receiving state fails to comply with the IAD time limit, but "a prisoner must likewise strictly comply with [IAD] provisions." *Miller*, 29 Va. App. at 631; *see Eckard v. Commonwealth*, 20 Va. App. 619, 627 (1995).

One requirement is that the prisoner deliver "to the prosecuting officer and the appropriate court of the receiving state, written notice of the place of the prisoner's imprisonment and the prisoner's request for final disposition of the indictment, information[,] or complaint." *Eckard*, 20 Va. App. at 624 (quoting *Delgado v. Commonwealth*, 16 Va. App. 50, 54 (1993)). By using the standard IAD form 2 and required certificate, the prisoner notifies the prosecuting authority of his intent to invoke the IAD. *Id.* at 628. Using the standard form allows a prosecutor to effectively identify an IAD request without having "to sort through every prisoner's correspondence and pleadings to find IAD references." *Id.* (quoting *Norton v. Parke*, 892 F.2d 476, 481 (6th Cir. 1989)). The prosecutor in the receiving state can determine from the IAD documents whether or not to prosecute. "If the prisoner is currently serving a lengthy sentence on a serious charge, then the [receiving] state might opt not to spend limited resources on a second trial unlikely to produce additional benefits." *Id.* at 628 (alteration in original) (quoting *Norton*, 892 F.2d at 481).

The IAD documents the Fauquier County Commonwealth's Attorney received from Martin on July 17, 2023, did not strictly comply with the IAD requirements. They were not sent by registered or certified mail to the appropriate court or to the Commonwealth's Attorney, nor did they cite the correct offense and case number. Consequently, they did not trigger the 180-day deadline for trial. *See Delgado*, 16 Va. App. at 58-59 (holding that the 180-day limitation did not begin to run until Virginia received the Maryland warden's certificate along with the required

accompanying documents, even though the prisoner had made an earlier request to the Maryland warden for transfer to Virginia for trial); *Eckard*, 20 Va. App. at 629 (determining that the prisoner had not complied with the IAD); *Miller*, 29 Va. App. at 631-32 (concluding that neither the Commonwealth's communication to the police chief rather than the institutional facility nor the prisoner's letter to the Commonwealth's Attorney requesting disposition of the charges complied with the IAD); *see also Yiaadey*, 29 Va. App. at 544 (holding that the prisoner's "failure to strictly comply with the requirements of Article III [of the IAD] is fatal to his claim").

The record in this case establishes that Martin was tried within the 180-day limit. After he was extradited to Maryland and convicted of attempted murder, nothing occurred with respect to his pending Virginia eluding charge until he wrote the Fauquier County Circuit Court Clerk on March 17, 2023. Martin stated that Virginia had filed a detainer, and he therefore requested assistance so that he could "come to the State of Virginia to close out this case." The clerk's office filed the letter on March 23, 2023, but the Commonwealth's Attorney never received a copy of it. On May 17, 2023, Martin requested he be brought to Virginia under the IAD. But his request was sent to the Fauquier County General District Court, not the circuit court. The general district court mailed the request to the Commonwealth's Attorney on July 14, 2023, and that office received it three days later. Rather than simply ignoring the request as procedurally deficient, the Commonwealth's Attorney wrote to Martin on August 7, 2023, and specifically told him that his request had to be sent to the "appropriate prosecuting official" (the Fauquier County Commonwealth's Attorney) and the Fauquier County Circuit Court. Additionally, the prosecutor advised Martin that the request should recite the correct case number (CR16-457) and alleged crime (felony eluding).

On September 6, 2023, Martin filed a corrected request under the IAD for disposition of the eluding charge. Despite Martin's failure to send it by certified or registered mail, the Commonwealth, which received the request on September 25, 2023, proceeded under the IAD. A

detective from the Fauquier County Sheriff's Office went to Maryland and obtained temporary custody of Martin on November 6, 2023. Three days later, Martin was served with the indictment, and the trial occurred on February 1, 2024. The 180 days allowed under the IAD for the Commonwealth to prosecute Martin began to run on September 25, 2023, the date the requisite Article III documents were received. *Miller*, 29 Va. App. at 631-32; *Delgado*, 16 Va. App. at 58. From that date to February 1, 2024, when the trial began, was 129 days, well within the allowable time. Therefore, Martin's trial was timely under the IAD.[10]

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

_____

[10] The Commonwealth argued in the trial court that inasmuch as Martin was brought to trial under the IAD, it superseded the time limits in Code § 19.2-243. The court declined to rule on that point. The Commonwealth did not renew this same argument on appeal. In any event, we need not address it because Martin's trial was timely under both Code § 19.2-243 and the IAD.